[No. 1412.]

TONY DAVIS v. THE STATE.

1. ALTERATION OF BRANDS—INDICTMENT.—See the statement of the case for an indictment *held* sufficient to charge the offense of illegal alteration of a brand.
2. SAME—CHARGE OF THE COURT—NEW TRIAL.—The indictment having described the brand which was charged to have been altered, and also the brand as it appeared after its alleged alteration, and the evidence having shown that the altered brand as alleged in the indictment was very different from the alleged altered brand as found upon the animal, the trial court charged the jury, in substance, that, as the indictment alleged the particular mode of the alteration of the brand, the alteration must be proved as averred, or the defendant be acquitted. *Held,* that the charge was correct, and that this variance being made one of the grounds in the motion for new trial, the refusal of a new trial was error.
3. EVIDENCE.—See evidence held insufficient to support a conviction for illegal alteration of a brand.

APPEAL from the District Court of Live Oak. Tried below before the Hon. D. P. Marr.

The conviction was for the illegal alteration of the brand upon the body of a certain cow, the property of C. C. Lewis and N. Bluntzer. The penalty imposed was a two year term in the penitentiary.

The charging part of the indictment reads that, "Tony Davis, late of said county, on the twenty-eighth day of March, in the year of our Lord, one thousand, eight hundred and seventy-nine, in the county of Live Oak, unlawfully and fraudulently did alter

the brand of a certain cow, not being his own property, said cow being then and there the property of C. C. Lewis and N. Bluntzer, without the consent of said owners or either of them, by then and there unlawfully and fraudulently altering the following brand, to-wit: [here the brand was set out as a circle with a large half circle over it,] which was then and there on said cow, and the said Tony Davis did, then and there, by the said altering of said brand, change it into the following brand to-wit: [here the brand as it appeared after alteration was set out, as a circle with a cross mark through it, spanned over by a half circle, and two hieroglyphic characters to the right,] with the fraudulent intent to deprive the said owners of said cow, of the value of the same, and with the like intent to appropriate the same to the use and benefit of him, the said Tony Davis, against the peace and dignity of the State."

C. C. Lewis was the first witness introduced by the State. He testified that late in 1878 or early in 1879, and prior to the finding of this indictment, he found the cow in question, which was the joint property of himself and N. Bluntzer, in F. P. McNeil's pasture in Live Oak county. This cow had been originally branded with a small circle, spanned over with the half of a larger circle, which was the joint brand of the witness and Bluntzer. The brand on the cow had been changed by extending the line of the half circle so as to form a complete circle enclosing the small or original circle. Two lines drawn up and down and across from the four extremes of the outer circle intersected each other in the center of the inner or small circle, and two hieroglyphic characters, resembling somewhat a T and h connected, and a G, had been added to the right. The brand of the witness and Bluntzer was recorded in Live Oak county. The witness had this animal (a black or brown cow) inspected by J. W. Ramey, a justice of the peace in Lagarto, and a deputy hide and cattle inspector. F. P. McNeil was present. The witness could not, when he discovered it, tell exactly how long the brand had been altered, but judged then that it must have been altered some six or eight months, or nearly a year before. Neither he nor Bluntzer had given consent to the alteration of the brand, or the taking of the animal. Bluntzer was assisting in the prosecution of the defendant. The animal's range was in Live Oak county. When found with the brand altered, she was in Live Oak county. The witness was the foreman of the grand jury which presented this indictment.

Cross-examined, the witness said that he had never seen the defendant in possession of the animal. The altered brand as described in the indictment was different in appearance from the altered brand as it was traced on the cow. The witness would not have signed the bill of indictment as foreman of the grand jury if he had noticed how it set out the alteration. The witness's only means of knowing that Bluntzer had never consented to the alteration of the brand was that Bluntzer assisted in the prosecution. When the witness found the cow he sold her to McNeil.

F. P. McNeil testified, for the State, that he purchased the cow in question from W. B. Pearce, in Live Oak county, in 1878. The animal was then branded as described by the witness Lewis, except that in his description this witness extended the cross marks beyond the lines of the outer circle, and attached a fancy character to each end of the cross mark. After purchasing this animal from Pearce he branded her in his own brand, P. A. E. The witness again bought the cow from Lewis, when Lewis claimed her.

Cross-examined, the witness testified that he had never seen the animal in the possession of the defendant. The alteration, as described in the indictment, was nothing like the brand on the cow. Lewis asked the witness if he did not think the brand had been altered from a circle and over-half-circle. The witness replied that it was possible, and Lewis claimed the cow.

J. W. Ramey, who inspected the cow for Lewis, testified that as near as he could describe the brand claimed as an alteration, it was a circle and an over-half-circle, the circle divided into four quarters by a cross mark extending beyond the circle lines, with the side and lower ends of the cross mark terminating in arrow points, and the upper end straight. The alleged alteration as set out in the indictment was not similar in all respects to the brand as it appeared on the cow.

W. B. Pearce testified that he sold the animal in question to F. P. McNeil, in Live Oak county, in 1878, and that he purchased the animal from the defendant some seven or eight months before accepting from him a transfer of a bill of sale signed "Felis Cano." She was branded then very much as described by the witness Ramey, with some difference in the characters at the terminal points of the cross mark, and with the addition of Th connected, and a character something like a G. The brand was nothing like the alteration described in the indictment.

The record of brands was introduced, and disclosed the entry of a brand by the defendant, which resembled an h, surmounted on the upper line with a v inverted, and a G. The defendant's recorded mark was a crop and underbit in the left and an under-split in the right ear.

The following bill of sale was introduced in evidence:

"THE STATE OF TEXAS, }
    "LIVE OAK COUNTY.     }    "The twelfth day of August, 1877.
"Know all men by these presents that I, the undersigned, have this day bargained, sold and delivered to Tony Davis one cow in the following mark and brand to-wit: [Here the brand and mark were drawn, the brand very much as described by the witness Pearce, except the Th connected and G, and the mark representing a crop off the left and an over half crop and split in the right ear.]    8.00.

      "Witness:                                "FELIS x CANO.
      "M. S. PEARCE."

"THE STATE OF TEXAS, }
    "COUNTY OF LIVE OAK.  }
"Before me J. W. Ramey, a justice of the peace, and ex-officio notary public, personally appeared M. S. Pearce, who after being duly sworn says that he witnessed the above bill of sale, and saw Felis Cano make his mark, and knew of his own personal knowledge that he did so for the purpose therein stated; and that he witnessed the transfer on the reversed side of this bill of sale.

                "Witness my hand and official seal, at Lagarto,
      [L.S.]        this the twenty-eighth day of November, A.
                D. 1877.
                                "J. W. RAMEY,
          "J. P. and Ex-officio Notary Public, L. O. C.
"Transferred to W. B. Pearce, this the twentieth day of November, A. D. 1877.
                                "TONY x DAVIS.
"Witness:   M. S. PEARCE."

M. S. Pearce testified, for the defense, that he was present and saw the Mexican, Felis Cano, sign the bill of sale transferring the cow to the defendant, and he signed that bill of sale as a witness. The bill of sale was written at McNeil's rancho. The

defendant paid for the cow, but the witness did not remember how much. The witness did not know where the Mexican lived. He did not previously know the Mexican, and had not seen him since he drove the cow to McNeil's rancho. The witness did not know that the Mexican owned any cattle at all. He knew of no cattle in the brand mentioned in the bill of sale. W. B. Pearce was not present when the defendant purchased the cow.

The motion for new trial set up that there was a material variance between the alteration of the brand as set forth in the indictment and the proof; and that the verdict was contrary to the law and the evidence. The motion was overruled, and this appeal prosecuted.

*Eckford & Newton,* for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

WILLSON, J. Appellant was convicted of altering a brand upon a cow, not his own property, and without the consent of the owner, and with intent to defraud. We think the indictment is a good one, though it is inartistically drawn. It contains all essential averments of the facts which constitute the offense, as defined by Article 760 of the Penal Code.

The indictment particularly describes the brand which is charged to have been altered, and then describes the brand as it appeared after the alleged alteration. It is conclusively shown by the evidence that the altered brand, as alleged in the indictment, was very different from the alleged altered brand as found upon the cow. The court charged the jury upon this matter, in substance, that, as the indictment alleged the particular mode of the alteration of the brand, the alteration must be proved as averred, or they must acquit the defendant. This charge, we think, was correct. The allegation as to alteration of the brand was a necessary one, and the alteration set out in the indictment, while, perhaps, it was set out with unnecessary particularity, was descriptive of the offense of alteration, and must be proved as alleged. (*Warrington* v. *The State,* 1 Texas Ct. App., 168, and authorities there cited.) The defendant, in his motion for a new trial, made this variance one of the grounds of his motion. We think the verdict of the jury, in this respect, was contrary to the charge of the court, and contrary to the

evidence, and that the court erred in refusing to set aside the verdict and grant the defendant a new trial.

We are also of the opinion that the evidence, as presented to us in the record, is in other respects insufficient to support the verdict of the jury. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered November 15, 1882.